UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DYC CO. LTD.,

Plaintiff and counter-defendant,

Case Number 25-14076
Honorable David M. Lawson

v.

TENNECO LLC a/k/a TENNECO INC.,

Defendant and counter-plaintiff.
______________________________________/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS COMPLAINT AND GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

Plaintiff DYC Company, Ltd., a Korean automobile parts supplier, brought suit in this Court to recover nearly $1.2 million in unpaid invoices, plus over $400,000 in other damages. DYC alleges that it formed an agreement with defendant Tenneco LLC to furnish certain parts to Tenneco LLC's subsidiaries by way of "scheduling agreements" with those subsidiaries. The documents filed with the complaint — the general terms and conditions, the scheduling agreements, and the invoices — demonstrate that the entities contractually obligated to DYC are the subsidiaries, not Tenneco LLC. Tenneco LLC filed a motion to dismiss the complaint, arguing that it has no legal obligation to pay the invoices. It also filed a counterclaim contending that DYC breached the governing general terms document by suing the wrong entity too late and in the wrong forum. DYC moves to dismiss the counterclaim. The Court heard oral argument on June 23, 2026. Because DYC sued the wrong counterparty to the contracts, its complaint fails to state a plausible claim at law, although it does plead a sustainable equitable claim against the named defendant. The counterclaim's attempt to convert valid affirmative defenses into coercive claims lacks merit.

The defendant's motion to dismiss will be granted in part, and the motion to dismiss the counterclaim will be granted.

I.

According to the complaint, DYC began supplying goods to Tenneco LLC, a Delaware limited liability company (that was converted from a predecessor corporation, Tenneco Inc.) in 2018. DYC alleges that the unpaid invoices that it seeks to collect in this case are based on "scheduling agreements" executed by Tenneco LLC's subsidiaries in Celaya, Mexico, Napoleon, Ohio, and Reynosa, Mexico. Each of the scheduling agreements incorporates a document entitled "Tenneco Inc., General Terms and Conditions of Purchase, GLOBAL." Compl., ¶8; Terms and Conditions, Compl. Ex. 1, ECF No. 1-2. Although the complaint alleges that the scheduling agreements were contracts between DYC and "Tenneco," meaning Tenneco LLC, the "General Terms" document lays out the manner in which the parties would form their contracts:

> Each purchase order, purchase order revision, scheduling agreement, supply agreement, or other purchasing document ("Order") issued by the applicable subsidiary or affiliate of Tenneco Inc. ("Buyer") is an offer to the seller identified on the Order and its applicable subsidiaries and affiliates (collectively, "Supplier") for the purchase of goods, parts, components, tooling, equipment, materials and/or services (collectively, the "Goods") and includes and is governed by these terms and conditions of purchase (collectively, these "Terms"). . . .

ECF No. 1-2, § 1, PageID.15. Per the terms and conditions, a contract between the Buyer and the Supplier is formed upon the Supplier's acceptance of the Order. *Id.* § 2. The Buyer is responsible for paying invoices. *Id.* § 12(a) ("Except as otherwise provided in these Terms, Buyer will pay upon proper invoices in accordance with applicable payment date terms stated in the Order or a Signed Writing.").

The unpaid invoices are tied to three specific scheduling orders for shipments of goods, which are attached to the complaint:

- PO 5500046467 (Celaya, Mexico facility)

- PO 5500047148 (Napoleon, Ohio facility)
- PO 5500047150 (Reynosa, Mexico facility)

ECF No. 1-3. The agreements themselves contain a "Tenneco" heading but reference either Tenneco International Mfg S.a.r.l. (Tenneco International) or an entity called "Pullman-Clevite USA" (Pullman) in the portion of the agreements labeled "Company." *Ibid.* Each agreements lists the "Payment Terms" as "2ND2-Due 2nd day of 2nd Month." *Ibid.* Also attached to the complaint are a sheaf of invoices issued under the scheduling agreements, along with packing slips, bills of lading, and other commercial documents. The invoices associated with shipments to the Celaya, Mexico facility list "Tenneco Int'l Mfg. S.a.r.l. Celaya" on the "Bill To" line in the headers. ECF No. 1-5. The invoices associated with shipments to the Reynosa, Mexico facility appear to be billed to "Tenneco Int'l Mfg. S.a.r.l. Reynosa." ECF No. 1-7. The invoices for shipments to the Napoleon, Ohio facility are billed to "DRiV Tenneco Clevite NA." ECF No. 1-6. Among the invoices are packing lists stating that goods are "Sold To" Tenneco Inc., but it is unclear which invoices they correspond to. *See*, *e.g.*, *id.* at PageID.106, 111, 116, 124.

As mentioned, each of the scheduling agreements incorporate Tenneco LLC's general terms and conditions, which included forum selection, choice-of-law, and indemnity provisions, some of which are discussed later. However, none of the three scheduling agreements identify Tenneco LLC (or its predecessor corporation) as a party to the respective agreements.

The complaint states that between July 2022 and February 2023, DYC issued numerous invoices for goods delivered pursuant to the three scheduling orders at issue. Compl., ¶10. The invoices went unpaid. *Id.* ¶11. Tenneco LLC represented that payments would be delayed until April 2023, but other than a small unexplained payment, it never paid the invoices. *Id.* at ¶14. Then, in September 2023, Tenneco LLC asked DYC to resubmit some of the invoices, but it never paid those, either. *Id.* at ¶¶15, 17. At some point in 2023, Tenneco LLC terminated DYC's access

to its internal supplier system without explanation. *Id.* at ¶16. Nonetheless, DYC continued to communicate with Tenneco LLC personnel about the unpaid invoices throughout 2023 and into 2024. *Id.* at ¶17.

The total outstanding balance of the invoices is $1,194,819.08. *Id.* at ¶11. The complaint includes an affidavit of account verifying the delinquent amount. ECF No. 1-4.

DYC filed a complaint on December 17, 2025 seeking to recover the amount of the unpaid invoices. The complaint pleads five separate counts: breach of contract (Count I), account stated (Count II), unjust enrichment (Count III), and promissory estoppel (Count IV). It brings a fifth count for $432,007.15 in "reliance/inventory damages" based on the costs it incurred in manufacturing goods to Tenneco LLC's specifications that it was unable to sell to Tenneco LLC or anyone else.

Tenneco LLC moved to dismiss the complaint, arguing among other things that it was not a party to the relevant contracts. It also has filed a counterclaim for reimbursement of attorneys' fees under an indemnity clause in the general terms and conditions, alleging that DYC breached the scheduling agreements by suing the wrong entity, filing the case in the wrong forum, and bringing claims outside of the contractual limitation period. DYC has moved to dismiss the counterclaim.

II.

Tenneco LLC invokes Federal Rule of Civil Procedure 12(b)(6) in its motion to dismiss. To survive the motion, the plaintiff "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.'" *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Ibid.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a motion under Rule 12(b)(6), the Court looks only to the pleadings, *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008), the documents attached to them, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)), documents referenced in the pleadings that are "integral to the claims," *id.* at 335-36, documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference, *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), and matters of public record, *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). However, before a court considers documents "integral to the claims" and that are referenced in the complaint, "it must also be clear that there exist no material disputed issues of fact regarding the relevance of the documents." *Diei v. Boyd*, 116 F.4th 637, 644 (6th Cir. 2024) (*Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012)). "[C]ourts may take judicial notice of facts in a public record that 'are not subject to reasonable dispute' — such as the court's ultimate resolution of a prior case." *Blackwell v. Nocerini*, 123 F.4th 479, 487-88 (6th Cir. 2024); *see also Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC,* 46 F.4th 454, 457 (6th Cir. 2022) ("While the question of whether to grant a Rule 12(b)(6) motion to dismiss is typically confined to the pleadings, we may take judicial notice of other court proceedings without converting the motion into one for summary judgment." (quoting *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)). However, beyond those materials, assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010).

A.

The viability of Counts I and II of the complaint depends on whether the allegations and the supporting, uncontested exhibits establish that DYC formed a contract for the sale of goods with Tenneco LLC, as opposed to one of Tenneco LLC's subsidiaries. Tenneco LLC insists that it was not a party to any of the scheduling agreements alleged in the complaint. Instead, it asserts that exhibits to the complaint confirm that Pullman and Tenneco International were the parties to those contracts. Further, it contends that the complaint and the attached exhibits establish at most that some of Tenneco LLC's employees communicated with DYC about the invoices, which does not make Tenneco LLC a party to those contracts. And it argues in its reply brief that DYC has not satisfied the standard for piercing the corporate veil.

DYC responds that the emails and other documents attached to the complaint show that Tenneco LLC's employees "administered the procurement relationship," coordinated payments, and were involved in the parties' course of performance, and therefore an agreement on the debt can be "inferred from the parties' conduct," and Tenneco LLC's communications regarding the invoices, and its alleged partial payment of the invoices are sufficient to support this inference.

As to Counts I and II, the defendant has the better argument.

Initially, there are choice-of-law provisions in the General Terms and Conditions document, but the parties' arguments are based on Michigan contract law, and neither of them have suggested that application of the law of another jurisdiction would alter the outcome. The Court will apply Michigan law to the present dispute.

To state a claim for breach of contract under Michigan law, a plaintiff first must establish the elements of a valid contract. *Pawlak v. Redox Corp.*, 182 Mich. App. 758, 765, 453 N.W.2d 304, 307 (1990). A valid contract is formed when there are (1) parties competent to contract, (2)

a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich. App. 418, 422, 468 N.W.2d 58, 60 (1991). Once a valid contract has been established, the plaintiff then must prove (1) the terms of the contract, (2) breach of those terms by the defendant, and (3) injury to the plaintiff resulting from the breach. *Lossia v. Flagstar Bancorp Inc.*, 895 F.3d 423, 428 (6th Cir. 2018) (citing *Miller-Davis Co. v. Ahrens Const., Inc.*, 296 Mich. App. 56, 71, 817 N.W.2d 609, 619 (2012)).

Courts must "examine the language of the contract according to its plain and ordinary meaning." *Cnty. of Ingham v. Michigan Cnty. Rd. Comm'n Self-Ins. Pool*, 508 Mich. 461, 477, 975 N.W.2d 826, 834 (2021) (quotation omitted). "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Ibid.* A contract is ambiguous if "two provisions of the same contract irreconcilably conflict with each other" or if a provision "is equally susceptible to more than a single meaning." *Kendzierski v. Macomb Cnty.*, 503 Mich. 296, 311, 931 N.W.2d 604, 612 (2019) (quotations omitted). If a contract is ambiguous, its interpretation is a question of fact for the jury. *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 469, 663 N.W.2d 447, 453-54 (2003).

The parties agree that the relevant contracts are the scheduling orders, which incorporate by reference the terms and conditions. But Tenneco LLC only could have breached those contracts if it was a party to them. Because "[a] defendant cannot be sued for breaching a contract it is not a party to," DYC's breach-of-contract claim can only survive a motion to dismiss if it plausibly has alleged that Tenneco LLC is a party to the relevant contracts. *Johnson Elec. N. Am., Inc. v. Daimay N. Am. Auto., Inc.*, No. 19-13190, 2020 WL 1531727, at *2 (E.D. Mich. Mar. 31, 2020).

The complaint comes up short on that score. True, it alleges that the relevant contracts were formed between DYC and "Tenneco" — that is, Tenneco LLC. Compl., ¶23. However, the

court may disregard allegations in a complaint that are contradicted by the attached exhibits. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quoting *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998))).

The terms and conditions attached to the complaint expressly define the "Buyer" to be "the applicable subsidiary or affiliate of Tenneco Inc." who issues an "Order." ECF No. 1-2, § 1, PageID.15. A scheduling agreement is an "Order." *Ibid.* Upon the Supplier's acceptance of the Order, the Order, the terms and conditions, and other related documents "become a binding contract between Buyer and Supplier . . . ." *Id.* § 2. The Buyer is the party responsible for paying invoices. *Id.* § 12(a) ("Except as otherwise provided in these Terms, Buyer will pay upon proper invoices in accordance with applicable payment date terms stated in the Order or a Signed Writing."). Tenneco LLC was not the Buyer because it did not issue any of the scheduling agreements (i.e., the "Orders") identified in the complaint. It cannot be liable for failing to make payments because it was not a Buyer or otherwise a party to any of those contracts. Instead, the contracts were between DYC and "the applicable *subsidiary or affiliate of* Tenneco Inc. [predecessor to Tenneco LLC]." *Id.* § 1 (emphasis added).

The scheduling agreements themselves reinforce that point. They list the "Company" and the destination for invoices as either Tenneco International or Pullman. ECF No. 1-3, PageID.42-46. Nowhere on the documents is Tenneco LLC (or Tenneco Inc.) mentioned as the "Buyer"; nor can it be deemed a "Buyer" within the meaning of the general terms and conditions document. Since Tenneco LLC was not a party to the contracts that were formed upon acceptance of the scheduling agreements, it was not the party responsible for payments.

DYC pushes back, arguing that Tenneco LLC's employees "administered the procurement relationship," coordinated payments, and were involved in the parties' course of performance, such that Tenneco LLC might be deemed a party itself. Perhaps DYC is suggesting that agency law might rescue its claim, asserting that Tenneco LLC might have been a principal or agent of Pullman or Tenneco International. However, it does not cite any authority supporting the theory that such an agency relationship could result in liability to Tenneco LLC itself where the terms and conditions expressly provide that its affiliates or subsidiaries are liable for payments. Rather, as Tenneco LLC observes, "[i]t is a well-recognized principle that separate corporate entities will be respected." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547, 537 N.W.2d 221, 224 (1995). "Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Ibid.* In other words, DYC must "pierc[e] the corporate veil" in order to hold Tenneco LLC liable for the obligations of another entity. *Id.* at 548, 537 N.W.2d at 224. DYC does not plead facts to support such a claim, which is not surprising since it does not ask the Court for that relief.

The allegations in the complaint and all the documents submitted to support those allegations do not set forth a basis for concluding that Tenneco LLC was a party to the scheduling agreements where the contract documents expressly provide otherwise. Since Tenneco LLC was not a party to the relevant contracts, DYC cannot state a claim against it for breach of contract.

For the same reasons, the same fate befalls DYC's account stated claim. Under Michigan Law, "[a]n account stated action is based on an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." *Fisher Sand & Gravel Co. v. Neal A. Sweebe, Inc.*, 494

Mich. 543, 554, 837 N.W.2d 244, 251 (2013) (quotation omitted). An account stated is "an independent cause of action, separate and distinct from the underlying transactions giving rise to the antecedent debt." *Id.* at 560, 837 N.W.2d at 254. It arises when the defendant expressly or impliedly agrees that a specified sum is owed to the plaintiff. *Id.* at 558-59, 837 N.W.2d at 253.

However, an account-stated action presumes the existence of an underlying course of dealing between the parties. *Butzel Long v. Oram*, No. 363083, 2024 WL 4847833, *1 (Mich. Ct. App. Nov. 20, 2024). In *Butzel Long*, the defendant signed a separation agreement with business partners in which he assumed the business's debts, which included a legal bill to the Butzel Long law firm. Reversing the summary order for the law firm, the court of appeals observed that "[c]laims for open account and account stated presumptively require 'a course of dealing between the parties,'" *id.* at *6 (quoting *Fisher Sand & Gravel*, 494 Mich. at 553, 837 N.W.2d at 250), holding that because there was no "direct contractual relationship or course of dealing" between the plaintiff and the defendant, the account-stated claim against defendant Oram should have been dismissed. *Id.* at *8.

DYC's position here is similar to the law firm's situation in *Butzel Long*. Although DYC alleges a course of dealing between the parties whereby DYC would provide parts to Tenneco LLC and Tenneco LLC would pay for them, Compl., ¶28, the attached exhibits contradict the allegation. And even though the complaint alleges that Tenneco LLC acknowledged the debt when it "affirmatively instructed Plaintiff to update and resubmit all outstanding invoices," Compl., ¶30, the relevant contract documents show that Tenneco International and Pullman — not Tenneco LLC itself — were deemed to be the "Buyer" and were liable for payments. Because DYC does not allege a contractual relationship or course of dealing other than those contractual relationships, to which Tenneco LLC was not a party, its account stated claim cannot survive.

B.

DYC also attempts to assert Tenneco LLC's liability on a promissory estoppel theory.

"To successfully assert a claim for promissory estoppel, a plaintiff must establish the following elements: (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 226-27, 933 N.W.2d 363, 377 (2019) (quotation marks omitted). "A promise giving rise to an actionable claim must be 'clear and definite,' while statements that are 'indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct, cannot serve as the foundation for an actionable reliance.'" *Id.* at 227, 933 N.W.2d at 377 (quoting *State Bank of Standish v. Curry*, 442 Mich. 76, 85-86, 500 N.W.2d 104, 108 (1993)).

Merely reciting the elements of a promissory estoppel cause of action demonstrates the flaws in DYC's claim based on this theory. The complaint alleges that Tenneco LLC "made clear and definite promises — through its purchase orders, revised scheduling agreements, and email directives — to purchase goods and pay Plaintiff." Compl., ¶39. However, as discussed above, the orders and scheduling agreements plainly demonstrate that the contracting parties were DYC and Tenneco LLC's affiliates or subsidiaries. There was no promise by Tenneco LLC to purchase or pay for the goods. The email directives alleged by DYC also do not include any clear and definite promise by Tenneco LLC to pay any of the invoices. At most, the complaint alleges that Tenneco LLC told DYC to resubmit invoices "to reflect a new scheduling-agreement number," and it "acknowledged that payment would be delayed until April," and made a small partial payment. Compl., ¶¶14-15. None of these actions or statements amount to a "clear and definite"

promise that Tenneco LLC itself would pay for the outstanding invoices. *See Bright Works Eng'g, PLLC v. Camatic Seating Inc.*, No. 25-CV-10446, 2025 WL 3157871, at *5 (E.D. Mich. Nov. 12, 2025) (finding that defendant's alleged assurances that the plaintiff "would be paid" were not a "clear and definite promise" to guarantee another party's obligations under a contract to which the defendant was not a party). And even with these allegations, DYC runs headlong into the fundamental rule that "no action for promissory estoppel may lie when an oral promise expressly contradicts the language of a binding contract." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008) (citation omitted).

Count IV of the complaint fails to state a cognizable claim for promissory estoppel.

C.

DYC's Count V is labeled "reliance/inventory damages," and it seeks to recover $432,007.15 for parts that it produced to Tenneco LLC's specifications but was unable to sell to Tenneco LLC (or any other third party) because of Tenneco LLC's disruption of the commercial relationship. DYC's brief clarifies that this count is not intended to assert a cause of action, but instead it represents an additional source of damages for its breach-of-contract or promissory-estoppel claims. ECF No. 19, PageID.1091-92. Because none of these theories of liability can be sustained, there is no basis to support this damages theory. Count V will be dismissed.

D.

That leaves DYC's claim for unjust enrichment. To plead such a claim under Michigan law, a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted. *Fodale v. Waste Mgmt. of Michigan, Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827, 841 (2006). Michigan courts then will imply a contract to prevent unjust enrichment. *Ibid.* However, courts will not imply a contract where there is an express contract

governing the same subject matter. *Ibid.* DYC has alleged facts that support recovery against Tenneco LLC for unjust enrichment.

When viewing the complaint's allegations in light of the invoices and other attached contract documents, it becomes evident that DYC furnished goods to Tenneco LLC's subsidiary companies, not Tenneco LLC itself. But the requirement that a benefit be conferred upon the defendant does not always require the defendant to receive the benefit *directly*.

This point is illustrated in Michigan law by *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 729 N.W.2d 898 (2006). In that case, subcontractor Centerline Piping contracted with the plaintiffs to purchase materials to be used in a wastewater treatment facility. *Id.* at 190, 729 N.W.2d at 901. The plaintiffs supplied the materials, but Centerline went out of business, quit the project, and never paid the plaintiffs. *Id.* at 190-91, 729 N.W.2d at 901-02. The general contractor on the project then hired a new subcontractor, who used the materials supplied by the plaintiff without paying for them. *Id.* at 191, 729 N.W.2d at 902. The court of appeals held that the general contractor received a benefit from the materials, and it was unjustly enriched when it retained that benefit while knowingly allowing the plaintiffs to go unpaid. The court observed that "as the general contractor, defendant was surely aware that the materials and supplies used to complete the project had been specially delivered to the site by plaintiffs" and was "likely aware that Centerline, which had gone out of business and had left the project, had not paid for the items." *Id.* at 196-97, 729 N.W.2d at 904-05. It reasoned that

> [i]f defendant's retention of the materials supplied by plaintiffs had been completely innocent and without knowledge, we might be inclined to conclude that defendant's enrichment was not unjust. However, we simply cannot classify defendant's act of retaining and using the materials, without ever ensuring that plaintiffs were compensated for the materials, as innocent, just, or equitable. We conclude that an inequity resulted to plaintiffs from defendant's wrongful retention of the materials. Defendant's retention of the materials, coupled with defendant's

> failure to compensate plaintiffs, resulted in the unjust enrichment of defendant at plaintiffs' expense.

*Id.* at 197, 729 N.W.2d at 905 (internal citations omitted).

It is conceivable, however, that a defendant's receipt of a benefit may not be unjust when the parties' contracts clearly contemplate that a third party was responsible for payments. In *Landstar Express Am., Inc. v. Nexteer Auto. Corp.*, 319 Mich. App. 192, 900 N.W.2d 650 (2017), for instance, the plaintiff contracted with nonparty Contech to deliver parts. *Id.* at 194, 900 N.W.2d at 652. Contech would then, in turn, deliver the parts to the defendants. The contract between the plaintiff and Contech, as well as the contract between Contech and the defendants, made clear that Contech was the party responsible for paying the plaintiff. After it was unable to collect payment from Contech directly for its deliveries, the plaintiff sued the defendant on an unjust enrichment theory. Under those circumstances, the court of appeals held, the benefit the defendant received was not "unjust" because it "was nothing more than what all the parties contemplated" in their contracts. *Id.* at 206, 900 N.W.2d at 658. "[A]ll the parties contemplated that Contech — not defendants — would be responsible for the shipping charges. . . . To rule that defendants now should pay for Contech's debts would work an injustice against defendants, who had a contractual right to have Contech pay for these costs." *Ibid.*

DYC has pleaded facts that tilt the scenario more toward *Morris Pumps*. It is plausible that DYC can prove the elements of an unjust enrichment claim by showing that Tenneco LLC benefited from the goods shipped to and received by its subsidiaries for which no payments were made. Although Tenneco LLC asserts that it did not receive any benefit from DYC because the goods were shipped to its affiliates, it is reasonable to infer at the motion-to-dismiss stage that Tenneco LLC might have derived an indirect benefit from the transactions with its affiliated companies, in the same way that the general contractor benefitted indirectly from the materials

provided to its subcontractor in *Morris Pumps.* Moreover, it is plausible that Tenneco LLC, like the general contractor in *Morris Pumps*, had at least some awareness that its apparent subsidiaries or affiliates were not paying DYC. Discovery may bear out an indirect benefit received by Tenneco LLC from the transactions, with its knowledge that DYC would not be paid, and that Tenneco LLC might have been enriched unjustly.

Tenneco LLC suggests that an unjust enrichment claim is unavailable here because, like in *Landstar*, there was an express contract in this case stating that a nonparty was responsible for payment. However, unlike in *Landstar*, Tenneco LLC disavows any party status under all of the alleged contracts. Generally, an implied contract is precluded "if there is an express contract *between the same parties* on the same subject matter." *Morris Pumps*, 273 Mich. App. at 194, 729 N.W.2d at 903 (quoting 42 C.J.S. *Implied and Constructive Contracts* § 34). The *Landstar* court recognized a limited exception to this general rule because *both* the plaintiff *and* the defendant were parties to agreements governing the same subject matter that clearly designated a third party as liable. *See Landstar*, 319 Mich. App.at 203, 900 N.W.2d at 657. As the opinion explains, "the fact that defendant contracted with Contech and Contech, in turn, contracted with plaintiff — with all contracts specifically and consistently providing that Contech is the party responsible for shipping costs — is sufficient to preclude the imposition of any implied contract to the contrary." *Ibid.* But the *Landstar* court expressly distinguished those facts from *Morris Pumps*, in which there were "express contracts covering the same subject matter" but the defendant general contractor "was not a party to *any* of these express contracts." *Id.* at 203, 900 N.W.2d at 656 (quoting *Morris Pumps*, 273 Mich. App. at 195, 729 N.W.2d at 904).

Here, the only express contracts at issue are the scheduling agreements, to which Tenneco LLC was not a party. Therefore, like in *Morris Pumps*, and unlike in *Landstar*, there is no express contract that would preclude liability under an unjust enrichment theory.

Tenneco LLC also relies on *DDLI Logistics LLC v. Metalsa SA de CV*, No. CV 20-11872, 2022 WL 71778 (E.D. Mich. Jan. 5, 2022), which followed its preferred reading of *Landstar*. In *DDLI*, the court held that a contract between the plaintiff and one of the defendants, Metalsa Mexico, precluded the plaintiff's unjust enrichment claim against a related entity, Metalsa U.S., even though there was no express contract between Metalsa U.S. and the plaintiff. But that holding cannot be squared with Michigan law as stated in *Morris Pumps*, 273 Mich. App. at 195, 729 N.W.2d at 904 ("The mere existence of the express contracts between plaintiffs and [a third party] does not bar recovery from defendant in quantum meruit."), which this Court is bound to follow, *7-Eleven, Inc. v. CJ-Grand, LLC*, 517 F. Supp. 3d 688, 693 (E.D. Mich. 2021) (explaining that a federal court exercising diversity jurisdiction much apply the substantive law as prescribed by a state's highest court, and if that court has "not addressed a determinative point of law, this Court must predict how it would resolve the issue from all relevant data," which includes "decisions of the state appellate courts, and those decisions should not be disregarded unless [the federal court] is] presented with persuasive data that the [highest court] would decide otherwise") (cleaned up) (citations omitted). As discussed, *Landstar* created an exception to the rule that a contract with a third party does not preclude an unjust enrichment claim only where the defendant and the plaintiff are parties to a contract with the same third party governing the same subject matter.

The complaint and the documents attached to it plausibly allege that Tenneco LLC unjustly received a benefit from DYC's delivery of parts to its subsidiaries and affiliates. No express contract precludes the unjust enrichment claim.

Count III states a claim upon which relief may be granted.

E.

DYC embedded in its response brief a request to amend its complaint to address any deficiencies that the Court might find. However, it has not invoked the proper procedure to seek an amendment of its pleadings. At this stage of the case, an amendment is allowed only by stipulation or an order of the court granting leave. Fed. R. Civ. P. 15(a)(2). A request for an order from the court "must be made by motion" describing with particularity the grounds for seeking the order and stating the relief sought. Fed. R. Civ. P. 7(b). In this district, "[m]otions must not be combined with any other stand-alone document," and a "a counter-motion must not be combined with a response or reply." E.D. Mich. LR 7.1(i). In addition, parties must submit a proposed amended pleading with a request for leave to amend, E.D. Mich. LR 15.1, and DYC has not done so. The Court will not entertain DYC's request to amend its complaint at this time.

III.

DYC filed a separate motion to dismiss, or alternatively to strike, Tenneco LLC's counterclaim. Civil Rule 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Tenneco LLC's counterclaim does not fit any of those descriptions, so the Court will not apply that rule to address it. *See C.S. v. McCrumb*, 135 F.4th 1056, 1068 n.10 (6th Cir. 2025) ("Considered a drastic remedy, motions to strike are viewed with disfavor and are not frequently granted.") (cleaned up).

The main thrust of the motion is that the counterclaim, which is based on indemnity language in the general terms and conditions document, fails to state a viable claim and should be dismissed under Rule 12(b)(6). Tenneco LLC's counterclaim asserts that DYC breached the terms and conditions, which are incorporated by reference into scheduling agreements, by suing the

wrong party, doing so in the wrong court, and doing so after the contractual limitations period already expired. It seeks damages in the form of attorney's fees incurred in defending this lawsuit, which it asserts are authorized under the indemnity provision in the terms and conditions.

The irony of Tenneco LLC alleging a breach of contracts to which it insists it is not a party is not lost on the Court. That is especially true where the provisions allegedly breached provide contractual defenses and are not generally thought to furnish a basis for affirmative coercive relief. Tenneco cites its status as a third-party beneficiary, pointing to section 25(a) of the terms and conditions, which states that the "supplier," that is, DYC, will indemnify the "Buyer" and all of its "agents, customers, invitees, subsidiaries, affiliates, successors and assigns" from "losses" caused by "any breach or failure by Supplier to comply with . . . terms and conditions of an Order . . . ." ECF No. 1-2, § 25(a)(iii), PageID.25-26. Tenneco LLC asserts that it is an "affiliate" of the "Buyer," such that DYC, as "Supplier," must "indemnify" Tenneco LLC for all costs, including attorney's fees, incurred as a result of DYC's breach of the terms and conditions. This is broad indemnity language, but whether Tenneco LLC qualifies as an affiliate or otherwise can claim third-party beneficiary status need not be addressed; the counterclaim does not state facts that establish any breach.

The counterclaim focuses on four provisions of the terms and conditions document. *First*, Tenneco LLC alleges that DYC breached the terms and conditions by "[s]uing Tenneco LLC instead of the applicable Buyer subsidiaries identified in the Orders." Counterclaim, ECF No. 21, PageID.1132, ¶27.a. It alleges that this conduct violated section one, which defines the "Buyer" to be one of Tenneco LLC's affiliates or subsidiaries, rather than Tenneco LLC itself. ECF No. 1-2, § 1. For reasons already discussed, Tenneco LLC is correct that DYC has chosen the wrong party to sue on its breach of contract claim. However, section one does not prohibit DYC from

suing entities other than the Buyer. Therefore, DYC did not violate a contractual duty merely by filing a lawsuit against a non-party to the contracts.

*Second*, Tenneco LLC alleges that DYC violated a forum-selection clause by suing Tenneco International in an American court. ECF No. 21, PageID.1130, ¶16. It invokes section 47(b), which provides that "[a]ny legal or equitable actions or proceedings by Supplier against Buyer arising out of, or in connection with, [an] Order" and issued from a location outside the United States "may be brought by Supplier only in the court(s) having jurisdiction over the Buyer's receiving location." ECF No. 1-2, § 47(b), PageID.38. By its terms, this provision only applies to lawsuits "*against Buyer*." *Ibid.* (emphasis added). Since Tenneco LLC is not the Buyer, this provision does not apply to lawsuits against Tenneco LLC and provides it no benefit. The present lawsuit against Tenneco LLC does not violate this provision.

*Third*, Tenneco LLC alleges that DYC violated an arbitration/venue clause by filing this lawsuit in a Michigan court. It points to a section number 24 that, somewhat confusingly, is placed at the end of the terms and conditions after section 47. *See* ECF No. 1-2, PageID.39, § 24, PageID.26. Section 24(e) states in relevant part that if "Supplier will manufacture Products" in Mexico or if "any . . . aspect of Supplier's performance is required by the applicable Laws" of Mexico, then "all disputes arising out of or in connection with these Terms or the Order will be finally settled" by one or more arbitrators in Mexico City, unless Buyer chooses to sue Supplier "in the traditional Mexican court's jurisdiction." *Ibid.* It is debatable whether DYC's "performance" was "required" by Mexican law, since the choice-of-law clause applicable to foreign entities selects the law of the Buyer's principal place of business or registered office, *id.* §47(b), and Tenneco LLC does not allege that either of the Buyers — Tenneco International or Pullman — were organized, registered, or headquartered in Mexico. But, beyond that issue, the

clause does not affirmatively prohibit DYC from filing this lawsuit. Although a reasonable reading of the clause might require a court to dismiss a case or to compel arbitration so that the matter may be "finally settled" by arbitration in Mexico, it does not impose an obligation on DYC to *initiate* the case in any particular forum.

*Fourth*, Tenneco LLC alleges that DYC violated the terms and conditions by "[a]sserting claims outside the one-year contractual limitations period." Counterclaim, ECF No. 21, PageID.1132, ¶27.b. Section 47(d) states that "[t]o the extent permitted by applicable law, any action or proceeding by Supplier under any Order must be commenced no later than one (1) year after the alleged breach or other event giving rise to Supplier's claim occurs." ECF No. 1-2, §47(e). Unlike section 47(b), this provision plainly applies to lawsuits brought "*by Supplier*." *Ibid.* (emphasis added). Since DYC is the "Supplier," and it is suing to enforce one or more "Order[s]" — namely, the scheduling agreements — it was required to file its claims "under any Order" within a year after an alleged breach of contract or other event giving rise to its claim. It is reasonable to infer that DYC's claims based on the Tenneco affiliates' alleged nonpayment of the invoices might have accrued more than a year before it filed its complaint in December 2025, considering Tenneco LLC's allegation that DYC demanded payment for outstanding invoices from Tenneco International as early as November 2022. Counterclaim, ECF No. 21, PageID.1130, ¶19. However, DYC's claims in this case are not brought "under a[n] Order" because Tenneco LLC, the sole defendant, is not a party to any "Order."

Moreover, DYC's unjust enrichment claim likely is timely in any event. Under Michigan law, an unjust-enrichment claim is the "equitable counterpart of a legal claim for breach of contract," *AFT Mich v. Michigan*, 303 Mich. App. 651, 677, 846 N.W.2d 583, 599 (2014), and as such, the statute of limitations for a breach-of-contract claim applies to a claim for unjust

enrichment, *see Taxpayers Allied for Constitutional Taxation v. Wayne Co.*, 450 Mich. 119, 127 n.9; 537 N.W.2d 596, 600 (1995). The statute of limitations for a breach-of-contract claim is six years. Mich. Comp. L. § 600.5807(9). DYC's claim for unjust enrichment was brought well within that period, and therefore there is no basis to find that it breached the contractual limitations provision applicable to actions on an "Order."

The counterclaim does not state a claim for which relief may be granted and will be dismissed.

IV.

DYC's complaint and the attached documents establish that its contractual right to payment of the invoices it has identified is against Tenneco LLC's subsidiaries and affiliates, not Tenneco LLC itself. Therefore, its complaint fails to state a claim for breach of contract, account stated, or promissory estoppel for which relief can be granted against Tenneco LLC. The count of the complaint for "reliance/inventory damages" fails to state a cognizable, stand-alone claim. However, the complaint pleads a viable claim for unjust enrichment against the defendant. The defendant has not pleaded a viable counterclaim.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss the complaint (ECF No. 13) is **GRANTED IN PART AND DENIED IN PART**. Counts I, II, IV, and V of the complaint are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** in all other respects.

It is further **ORDERED** that the plaintiff's motion to dismiss the counterclaim (ECF No. 23) is **GRANTED**, and the counterclaim is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 30, 2026